Filed 1/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PATRICK TROLAN et al., as Trustees, etc.,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>NELLIE TROLAN,<br><br>     Defendant and Respondent. | H044213<br>(Santa Cruz County<br>Super. Ct. No. 16PR00237) |

This appeal arises out of a dispute between six siblings over the interpretation of the Trolan Family Trust (the trust), created by their parents in 1974. Upon the death of their mother in 2015, the siblings became cotrustees of the trust, with the power to act by majority vote. Five of the siblings, Appellants in this matter, agreed to maintain the assets in trust, hoping they would increase in value for the next generation. The sixth sibling, Respondent, asked for distribution of her share of the trust in cash, setting the stage for the instant appeal. Upon a petition filed by Appellants, the trial court interpreted the trust to require liquidation and distribution of the trust assets upon the death of the last surviving parent, based primarily on a provision requiring distribution to any beneficiary when he or she turned 30 years old. The court removed the siblings as trustees and ordered the replacement trustee to liquidate and distribute the trust assets, as all parties were over 30.

Appellants contend the trial court erred in making these findings and orders; additionally, they argue the court erred in ordering the trust to pay Respondent's attorney fees and costs incurred in opposing the petition. We agree with the trial court that the

clear, unambiguous language of the trust requires distribution of the trust assets and termination of the trust. However, the trial court erred when it ordered liquidation of the trust assets to accomplish that purpose, rather than deferring to the discretion of the trustees to distribute the trust. The orders removing the parties as trustees and requiring the trust to pay all attorney fees and costs flowed from that error. We therefore will reverse the orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The six siblings are Patrick Trolan, Jay Trolan, Therese Trolan, William Trolan, Tim Trolan (Appellants) and Nellie Trolan (Respondent). Their parents, Howard and Alice Trolan, established the trust in 1974, when all of the siblings were minors. Howard predeceased Alice, leaving her as the sole settlor and trustee.

In 2003, Alice Trolan amended the trust to name all six of her children, Appellants and Respondent, as successor cotrustees, with the power to act by majority vote.

Alice Trolan died in July 2015; at that time the trust became irrevocable, and the six siblings became the trustees.

### A. Relevant Trust Provisions

The Fifth section of the trust is entitled "Dispositive Provisions." Upon the death of the later surviving of Howard and Alice Trolan, the trust provides that it shall be apportioned into equal shares for each of the Trolans' "then living children."[1] The trust does not require the trustee to physically segregate or divide the trust shares, "except as segregation or division may be required by the termination of any of the trusts . . . ." The trustees have the ability to "distribute the remaining principal and any accumulated income, or continue the trust for the benefit of the beneficiaries [named in the trust], under the terms and conditions" set forth in the "Dispositive Provisions" section.

---

[1] Additional provisions discuss distribution if any of the Trolans' children are deceased; as all six children were alive at the time of Alice Trolan's death, those provisions are not relevant to our discussion.

2

Relevant to the instant dispute, the trust provides, "Distributions of principal shall be made as follows: [¶] . . . [¶] Whenever any beneficiary for whom a trust is then held shall have attained the age of twenty-five (25) years the Trustee shall distribute to such beneficiary one-half (1/2) of the principal of the trust held for him; upon having attained the age of thirty (30) years the Trustee shall distribute to such beneficiary the balance of his or her trust."[2] The trust further provides, "Unless sooner terminated in the manner hereinbefore provided, each trust shall cease and terminate not later than twenty-one (21) years from the death of the Surviving Spouse, or the death of the survivor of Co-Trustors' children, or any of their descendants who are living at the date this trust is executed, which ever death shall last occur."

The trust also sets forth "Trustee's Powers," giving the trustee certain "powers and discretions" in addition to those "granted to or vested in the Trustee by law or by [the trust]." The trustee can "continue to hold any property received in trust, including undivided interest in real property, and to operate any property or any business received in the trust as long as the Trustee, in the Trustee's discretion may deem advisable." The trustee also has the power, "[u]pon any division or distribution of the Trust Estate, to partition, allot and distribute the Trust Estate in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution."

### B. Dispute Leading to Petition

The trust estate consists primarily of Comerica Bank stock and several parcels of real property. Following Alice Trolan's death, Respondent asked to receive her one-sixth share of the estate in cash. Appellants agreed they wanted to retain the real property in trust hoping the property would appreciate in value. As the majority, they agreed to

---

[2] We shall hereafter refer to this provision as the Age 30 Provision.

3

transfer Respondent's share to her in cash after determining the value of her share based on the fair market value of the real property assets.

The parties retained a probate referee to value the real properties. Based on his appraisal, a conflict arose regarding the value, particularly of property located on Deer Creek Road in Santa Cruz.[3] Appellants contend the referee overvalued the land. They obtained alternate appraisals that valued the land much lower than the referee. Respondent wanted to use the referee's valuation to determine her share of the trust. Appellants proposed several alternatives, none of which involved the complete liquidation of the trust assets. Respondent found the proposals unacceptable.

During these negotiations, Appellants and Respondent each retained their own attorneys. Respondent asked that her attorney fees be paid from the trust, a request the Appellants opposed.

### C. Procedural History

Appellants then filed a Petition Regarding the Internal Affairs of a Living Trust (the petition), asking the trial court to make findings regarding the value of the trust estate as a whole and Respondent's share of that estate, based on the lower appraisal the Appellants obtained in response to the referee's overvaluation of the Deer Creek Road property. They further asked the court to order that, upon distribution to Respondent of her share, all parties sign a mutual general release confirming the accuracy of the court's finding regarding the value of Respondent's share, and waiving Respondent's right to appeal or bring any further proceedings regarding administration of the trust. The parties each own a 3 percent interest in one of the real properties contained in the trust, called the

---

[3] Appellants allege the dispute concerns one piece of property on Deer Creek Road; Respondent claims the dispute involves three pieces of property, two on Deer Creek Road and one referred to as the "small Brook Tree lot." For purposes of our analysis, we will refer to all of the disputed properties as the Deer Creek Road property. We do not need to determine the specific nature of the dispute in order to decide this appeal.

4

41st Avenue property in the petition; the trust owns the remaining 82 percent of the property. Appellants asked the trial court to allow the transfer of stock shares in exchange for the release of Respondent's 3 percent interest in the 41st Avenue property to the trust. Finally, they asked the court to order that Respondent pay her own attorney fees and costs.

Respondent filed opposition to the petition, arguing that the terms of the trust required outright distribution of the trust assets if all beneficiaries were at least 30 years old at Alice Trolan's death. She asked the court to make findings regarding the value of the trust assets, and the value of her share of the trust, based on the average of the appraisal prepared by the referee, and an additional appraisal she obtained for the Deer Creek Road property. She included in her proposed valuation of the trust the expenses the Appellants incurred, if proved by documentation and receipt, as well as her own attorney fees and costs. Respondent indicated she would release her 3 percent interest in the 41st Avenue property for $25,000. She asked the court to direct the trustees to liquidate the portion of the trust estate held in stocks and pay any capital gains as a trust expense. Respondent also believed the court should order the trustees to handle all income taxes, including capital gains taxes, at the trust level upon the transferring of trust assets to the six beneficiaries, so that all beneficiaries receive an equal beneficiary interest after factoring tax implications. She asked the court to order the sale of the real properties in the trust, with the proceeds divided equally amongst the six beneficiaries, and the trust thereafter to be terminated.

Following their initial pleadings, the parties filed several replies and trial briefs, each of which further elaborated on the nature of the dispute between them. Throughout her pleadings, Respondent's proposition for how the dispute should be resolved remained the same; in her trial brief, she confirmed her position that the trust assets should be sold, the proceeds equally distributed between the beneficiaries, and the trust thereafter terminated. Appellants changed their requested relief in each subsequent filing, although

5

they remained steadfast in their belief the trust did not need to be liquidated but could instead be maintained based on the decision of the majority of the cotrustees. In their trial brief, Appellants asked the court to find that Appellants, as the majority trustees, had the right to retain property in the trust in their discretion and had the right to decide questions of valuation of property held in the trust, suggesting the court's inquiry should end there.[4] If the trial court disagreed, Appellants asked the court to order Respondent to accept their offer that the one Deer Creek Road property they believed was in dispute be put on the market to determine the value of the lot. If the lot sold within 90 days, the sale price would be used to determine and distribute Respondent's share of the trust estate. However, if after 90 days the parties did not receive an offer over $425,000, Appellants suggested the court should use that figure to calculate Respondent's share, to be paid through a transfer of stock.

By stipulation of the parties, the court set an evidentiary hearing in September 2016. Each party provided exhibit and witness lists, and designated witnesses to testify regarding the valuation of the disputed property. At the outset of the hearing, the court issued a tentative ruling, "based on the Court's interpretation of the language of the Trust."[5] It determined there was no need to hold an evidentiary hearing to interpret the trust because, "the controlling language of the trust is specific and unambiguous," such that it could, "make a ruling requiring liquidation of the trust based on the trust's plain language." The court found the Age 30 Provision, which it described as a "mandatory specific provision," prevailed over the general provision allowing the trustees to continue to hold property in trust. After announcing the tentative decision, the court allowed argument. It then offered the parties the opportunity to meet and confer to settle their

[4] The brief references a proposed order Appellants submitted with the brief; that proposed order is not part of the record on appeal.

[5] The September 30, 2016 evidentiary hearing was not reported, as the parties did not provide a court reporter. The court issued an Order Certifying Settled Statement on Appeal in Lieu of Transcript on April 6, 2017.

6

dispute. After several hours, they were not able to reach a resolution, causing the court to adopt its tentative ruling. "The Court did not hear testimony from any of the appraisers or from the parties because the language was clear and the Court believed it must give preference to the specific trust provisions over the general trust provisions."

After ruling the Age 30 Provision required liquidation and distribution of the trust, the court ordered the removal of all cotrustees and appointed a professional fiduciary to carry out the trust terms. It did so, "Based on the Court's belief that the failure to distribute the trust assets was a breach of the fiduciary duties of loyalty and impartiality, and the fact that the parties could not reach a resolution even when they were aware of the Court's tentative ruling, and based on the sua sponte authority provided by [Probate Code] §15642(a)." The court then ordered the new trustee (the successor trustee) to liquidate the trust assets, pay expenses and taxes, pay both parties' attorney fees and costs from the trust, and distribute the balance equally between the parties. Regarding the 41st Avenue property, the court ordered that the 82 percent owned by the trust should be distributed to the parties in one-sixth shares, as tenants in common. The court memorialized these orders in a written order filed October 13, 2016; the attorney for the successor trustee gave the parties notice of the entry of that order on the same date.

Appellants subsequently filed a motion to vacate the October 13, 2016 order, while the successor trustee filed a petition to begin enforcing the order. On December 2, 2016, the court issued an order allowing the successor trustee to marshal the assets and pay expenses, taxes, and both parties' attorney fees pending the court's ruling on the motion to vacate; the court ruled that she could not start liquidating the assets until a determination regarding the October 13, 2016 order had been made. Appellants filed a Notice of Appeal of the December 2, 2016 order on December 8, 2016. When the court declined to rule on their motion to vacate based on that notice of appeal, Appellants then amended the appeal, first to include the October 13, 2016 order, and then to include the

7

September 30, 2016 minute order.[6]  Appellants timely appealed each of these appealable orders.  (Code Civ. Proc., § 904.1(1); Prob. Code, §§ 1300, 1304; Cal. Rules of Court, rules 8.104(a) and (c), 8.108(c).)[7]

## II. DISCUSSION

### A.  *The Trial Court Erred in Ordering the Liquidation of the Trust*

At the heart of Appellants' appeal is their contention that the trial court erred in finding that the trust had to be liquidated and distributed based on the Age 30 Provision; all subsequent orders flowed from that finding, including the court's order removing the parties as trustees and its orders instructing the successor trustee to pay both parties' attorney fees and costs from the trust assets.  Therefore, we will first consider the propriety of the court's interpretation of the trust to require the immediate distribution and liquidation of the assets.

### 1.  *Standard of Review*

"The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect.  [Citations.]  Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect.

---

[6] Although the October 13, 2016 order reflects the rulings the court made on September 30, 2016, Appellants included the September 30, 2016 minute order in the appeal as a "precautionary measure," in the event the minute order stood as an independently reviewable order under the Probate Code, as the October 13 order does not "precisely track" the minute order.

[7] On January 4, 2017, Appellants filed a petition for writ of supersedeas, mandate, prohibition, certiorari, or other appropriate relief, and a request for immediate stay, which we denied in an order filed June 5, 2017, after considering briefs from both parties.  We also denied Appellants' February 2, 2017 request to take judicial notice of judicial admissions in lieu of a settled statement.

8

[Citations.]  It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Sanders v. Yanez* (2015) 238 Cal.App.4th 1466, 1471.)  As the trial court did not consider extrinsic evidence in interpreting the subject trust, we review the matter de novo.  (See *Estate of Cairns* (2010) 188 Cal.App.4th 937, 944 (*Cairns*); *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 (*Ike*).)

### 2. *The Clear, Unambiguous Language of the Trust Required Distribution and Termination of the Trust Upon Alice Trolan's Death*

Appellants argue that the trial court misinterpreted Alice Trolan's intent, contending she did not mean to have the trust liquidated and terminated once all of the beneficiaries turned 30.  They believe the trial court's interpretation of the Age 30 Provision is inconsistent with the general provisions of the trust which delineate the powers of the trustees, in particular the power to continue to hold property in trust, and the power to act by majority vote.  Based on this alleged ambiguity, Appellants argue the trial court erred in refusing to consider extrinsic evidence.

Probate Code[8] section 21102 provides:  "(a) The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument. [¶] (b) The rules of construction in this part apply where the intention of the transferor is not indicated by the instrument.  [¶] (c) Nothing in this section limits the use of extrinsic evidence, to the extent otherwise authorized by law, to determine the intention of the transferor."

"The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative."  (§ 21120.)  "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole.  If the meaning of any part

---

[8] All future statutory references are to the Probate Code unless otherwise noted.

9

of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." (§ 21121.)

In order to first ascertain, and then, if possible, give effect to the intent of the trustor, the court must consider the whole of the trust instrument, not just separate parts of it. (*Cairns*, *supra*, 188 Cal.App.4th at p. 944.) If the language of the instrument clearly sets forth the intent, the court does not consider extrinsic evidence; it only looks to extrinsic evidence in the event of an ambiguity. (See *Estate of Dodge* (1971) 6 Cal.3d 311, 318 (*Dodge*); *Estate of Avila* (1948) 85 Cal.App.2d 38, 39-40 (*Avila*).) The trial court can consider extrinsic evidence to reveal a latent ambiguity. (*Estate of Dye* (2001) 92 Cal.App.4th 966, 977-979; *Estate of Russell* (1968) 69 Cal.2d 200, 206-213 (*Russell*).) The court can also consider extrinsic evidence regarding the circumstances under which the trust was made, in order to interpret the trust instrument, but not to give it a meaning to which it is not reasonably susceptible. (*Russell*, *supra*, 69 Cal.2d at p. 211; *Ike*, *supra*, 61 Cal.App.4th at pp. 73-74.) However, if the court can ascertain the testator's intent from the words actually used in the instrument, the inquiry ends. (*Estate of Newmark* (1977) 67 Cal.App.3d 350, 355-356.) "Where the terms of [the instrument] are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby." (*Avila*, *supra*, 85 Cal.App.2d at pp. 39-40.)

Considering the trust as a whole, we conclude the trust is not ambiguous on its face; the provisions clearly require the distribution of assets and termination of the trust upon the death of the last surviving spouse if the beneficiaries have all reached age 30. While Appellants contend the trial court erred in failing to consider extrinsic evidence on this point, nowhere in their briefs on appeal do Appellants allege that such evidence would reveal a different intent on Alice Trolan's part. Rather, they argue that the provisions of the trust itself reflect her intention, as the general powers afforded to the trustees conflict with the Age 30 Provision. But reviewing all provisions together, we

10

find the Age 30 Provision to be specific and unambiguous, and *consistent* with the other provisions of the trust. The Fifth section of the trust (the "Dispositive Provisions") which includes the Age 30 Provision, sets forth *how long* the trust will survive—at least through the life of the surviving spouse, and until all beneficiaries reach the age of 30. The remaining provisions specify the trustees' *duties during the life of the trust*. These terms are not contradictory, as it is reasonable to conclude that the trustees' duties as specified remain in effect until, as required under the Age 30 Provision, the trust is distributed and terminated. The Age 30 Provision simply determines when the trust shall be distributed. This reading of the trust is not strained and does not result in an absurd reading of the terms of the instrument but renders it a "consistent whole" under section 21121, and "give[s] every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120.) We are required to construe the trust so as to give effect to each term it contains; the plain meaning of the Age 30 Provision when construed with the trust instrument as a whole conveys Alice Trolan's unambiguous intent that the trust be distributed and terminated when all of the beneficiaries reach 30 years of age.

However, Appellants argue that the record on appeal does not include the whole trust because the second page of the document was not presented to the trial court. Appellants do not specify how a failure to consider page two harmed them in this case; while they generally allege the second page contains provisions showing their parents' intent to maintain the trust after Alice Trolan's death, they do not specify to which provisions they refer. "To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' [Citation.]" (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161.) Appellants contend Respondent had the burden of providing the trial court a complete copy of the trust because she was the party asking the court to interpret the trust. However, Appellants also asked the trial court to interpret the trust, insofar as they asked the court to determine whether the trust gave them authority to maintain, rather than sell,

11

the trust assets. Nothing in the record indicates they asked the trial court to consider page two of the trust in evaluating the issues; in their trial brief, Appellants did not cite to any of the provisions of page two as evidence of their parents' desire to maintain the trust after Alice Trolan's death. Nor does the record show Appellants objected to the court proceeding without a complete copy of the trust.

Appellants correctly assert that this court cannot consider page two, provided by Respondent in her appendix on appeal, as it is outside the record reviewed by the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.) Yet, that does not relieve Appellants of their burden to show prejudice from any purported errors committed by the trial court. Their argument thus fails, for they do not provide any information to show page two of the trust would alter the interpretation of Alice Trolan's intent, either by this court or the trial court.

Appellants next argue applying the Age 30 Provision as suggested by Respondent would have required the distribution of the trust during Alice Trolan's life, thus making the provision unenforceable as drafted. The plain language of the trust shows otherwise. The Age 30 Provision falls under Section 5(I)(3) of the trust document, which states at the outset, "*Upon the death of the Surviving Spouse*, the Trustee shall distribute the remaining principal and any accumulated income, or continue the trust for the benefit of the beneficiaries hereinafter named, under terms and conditions as follows: . . ." (Italics added.) The Age 30 Provision is one of the "terms and conditions," such that it only applied once Alice Trolan, the "Surviving Spouse," died. It did not apply during Alice's life.

Appellants assert the above-quoted portion of Section 5(I)(3) gives the trustees the ability to terminate the trust *or* continue the trust for the benefit of the beneficiaries, such that they could elect to continue the trust after Alice Trolan's death, which the majority did. But Appellants disregard the fact the provision allowing the trustees to terminate or

continue the trust is subject to the terms and conditions set forth in the remainder of Section 5(I)(3). Section 5(I)(3)(d) begins, "Distributions of principal *shall be made* as follows. . . ." (Italics added.) The subsequent provision, Section 5(I)(3)(d)(1) allows the trustee to make distributions to any beneficiary entitled to income from the trust as needed, "If the Trustee deems the net income payable hereunder not sufficient to provide for the reasonable care, support, maintenance, and education of any beneficiary. . . ." However, the Age 30 Provision, located in Section 5(I)(3)(d)(2), provides that there will be a partial distribution if the beneficiary is at least 25 years old, and full distribution once the beneficiary reaches age 30. These provisions, taken with the whole of Section 5, and the whole of the trust, indicate the trustees could continue the trust only where the terms and conditions required it to do so, namely if the beneficiaries were all under the age of 30. Once all beneficiaries were 30 or over, the terms of the trust required distribution to each of the beneficiaries upon the surviving spouse's death.

Appellants claim the fact all of Alice Trolan's children were over 30 at the time she amended the trust in 2003 and 2004 shows her intent that the Age 30 Provision would not serve to terminate the trust immediately upon her death. Respondent makes valid arguments to the contrary. First, she contends the court is required to assume Alice Trolan could have had more children up to her death. While the facts presented in the instant case suggest it was unlikely Alice would have more children after signing the amendments, the rule on this issue is clear: "On the general subject of the inheritance and devolution of estates, it is never presumed that a woman, no matter how aged, is incapable of bearing children." (*Fletcher v. Los Angeles Trust & Sav. Bank* (1920) 182 Cal. 177, 184, internal citations omitted; see Cal. Will Drafting (Cont.Ed.Bar 3d ed. 2017) § 34.17.) The second, and arguably more likely scenario proposed by Respondent, is that one of Alice Trolan's children could have predeceased Alice. Under Section 5(I)(3)(b)(2) of the trust, the deceased child's share of the trust would have then passed to his or her offspring, people who could have been under 30 at the time of Alice

Trolan's death. Therefore, we do not agree the fact the parties were over 30 at Alice Trolan's death reveals her intent to maintain the trust after her death.

Appellants also argue Section 5(I)(3)(e) requires the trust to exist for 21 years after Alice Trolan's death. That is not what the provision requires. Rather, it states, "*Unless sooner terminated* in the manner hereinbefore provided, each trust shall cease and terminate not later than twenty-one (21) years from the death of the surviving spouse. . . ." (Italics added.) As Respondent suggests, this provision comports with the basic statutory rule against perpetuities. "A nonvested property interest is invalid unless one of the following conditions is satisfied: [¶] (a) When the interest is created, it is certain to vest or terminate no later than 21 years after the death of an individual then alive. [¶] (b) The interest either vests or terminates within 90 years after its creation." (§ 21205.) Section 5(I)(3)(e) simply requires the trust to terminate after 21 years if it has not otherwise terminated pursuant to the other provisions.

Appellants suggest Respondent concedes in her response to the appeal that the trust contains ambiguities. They claim Respondent concedes the Age 30 Provision cannot be enforced as drafted to require distribution when each beneficiary turned 30 because Alice Trolan was still alive when each of her children turned 30. Appellants further believe Respondent concedes the Age 30 Provision is inconsistent with other provisions in the trust. But Respondent does not concede either of these arguments. As discussed above, she correctly argues the Age 30 Provision did not take effect until Alice Trolan's death, such that it did not require distribution while she was alive. She further says looking only at the Age 30 Provision, without considering the trust as a whole, one might think it is inconsistent with other provisions in the trust. However, she further argues that taking the trust as a whole, the Age 30 Provision is "clearly consistent" with the other provisions cited by Appellants. Respondent does not concede ambiguity in the trust.

14

Appellants further contend that application of the "specific-general rule" of statutory and document interpretation to the trust implicitly reveals ambiguity in the trust terms. Appellants claim, "Rules of interpretation are only applicable if a document is unclear and requires construction," thus arguing the trial court's use of the specific-general rule confirms the trust was ambiguous. We are not persuaded.

Code of Civil Procedure section 1859 sets forth the specific-general rule. "In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859.) The rule has been applied by courts of review to trust documents. Thus, *Estate of Greenleaf* (1951) 101 Cal.App.2d 658 (*Greenleaf*), demonstrates Code of Civil Procedure section 1859 does apply to interpretation of trusts; however, the Court of Appeal does not suggest the trial court must first consider extrinsic evidence or find an ambiguity to apply the rule. Rather, this rule governing the interpretation of the intent of the parties who drafted an instrument applies when two provisions in the document are inconsistent. "As to the general provisions of the trust in reference to the sale or disposition of the trust property, it appears that the trustee is vested with a wide discretion. It does not definitely appear that the general grant of discretion applies to the particular clause here involved, which clause specifically directs the trustee to act. Under section 3534 of the Civil Code particular expressions qualify those which are general. (See, also, Code Civ. Proc. § 1859.)" (*Id.* at pp. 664-665.) Thus, with respect to the Trolan trust, to the extent the Age 30 Provision is inconsistent with other general provisions of the trust, it is appropriate for the trustor's specific intent expressed in the Age 30 Provision to control over the general powers of the trustees pursuant to Code of Civil Procedure section 1859, without the need to find an ambiguity in the trust.

15

The ruling in *Estate of Simoncini* (1991) 229 Cal.App.3d 881, 889-890 further supports our conclusion that the specific-general rule applies even if there is no ambiguity in the document under review. Under the rule that the court must consider the whole of the testamentary instrument, and give ordinary interpretation to the words used therein, the Court of Appeal in *Simoncini* determined the will at issue in the case was unambiguous, despite the fact certain provisions appeared inconsistent. (*Id*. at p. 890.) The court reiterated the importance of considering specific statements of intent which may seem to conflict with more general statements, specifically a provision giving a particular property to one person despite the general statement the entire estate property should be equally divided. (*Ibid*.) "In our view, any other interpretation of the Will would violate the principle that the words of a will must be interpreted so as to give every expression some effect, rather than in a way that will render other language of the will inoperative. This interpretation of the disputed language also satisfies the statutory requirement that all parts of the Will must be construed so as to form a consistent whole. [Citation.] Appellant's interpretation, on the other hand, would require us either to ignore specific language in the Will, or actually to rewrite it so as to render it entirely inoperative. This is not the function of this court. [Citation.] We are not free to ignore the plain meaning of the words actually used by the testatrix in her Will. [Citation.]" (*Ibid*.)

The cases Appellants cite in support of their argument do not alter our analysis. *Edwards v. Arthur Anderson LLP* (2008) 44 Cal.4th 937 does not explicitly concern application of the specific-general rule; the language Appellants quote from that opinion does not provide sufficient support for their argument.[9] While *In re P.A.* (2012) 211 Cal.App.4th 23, a juvenile justice case, did involve the specific-general rule, it

_____

[9] " 'Where the language of a contract is clear and not absurd, it will be followed. [Citations.] But if the meaning is uncertain, the general rules of interpretation are to be applied.' [Citations.]" (*Edwards v. Arthur Anderson LLP*, *supra*, 44 Cal.4th at p. 953.)

similarly does not require us to find the trial court's application of that rule revealed an ambiguity in the trust. Rather, the Court of Appeal held that the specific-general rule could not be used to defeat legislative intent as between two inconsistent provisions of the Welfare and Institutions Code. (*Id*. at p. 40.) Neither of these cases is factually similar to the case before us. Nor do they reveal any error in the trial court's application of the specific-general rule. In the instant matter, even if the subject provisions were inconsistent, we can apply the specific-general rule to find the specific Age 30 Provision prevails over the other, general provisions outlining the duties of the trustees without first needing to find an ambiguity in the trust.

Even if the application of the specific-general rule did not implicitly reveal the existence of an ambiguity in the trust, Appellants argue the court was required to admit extrinsic evidence to determine whether there existed any ambiguities in the document. Citing *Russell*, *supra*, 69 Cal.2d 200, Appellants contend the trial court had to undertake a two-step process to determine whether an ambiguity existed in the trust. They believe the trial court first had to provisionally admit extrinsic evidence to determine whether there was an ambiguity, and then, if the trust was ambiguous, admit extrinsic evidence to interpret the settlor's intent. However, the Supreme Court in *Russell* indicates this two-step process only applies if there exists a latent ambiguity that does not appear on the face of the testamentary document (a will in that case). (*Id*. at p. 207.) On appeal, Appellants do not argue a latent ambiguity exists in the trust; they contend the ambiguity appears on the face of the trust instrument, citing to other provisions of the trust to argue the trial court incorrectly interpreted the Age 30 Provision. Nor does anything in the record presented to the trial court indicate Appellants intended to argue a latent ambiguity had the trial court held an evidentiary hearing.

Moreover, because Appellants have not identified the extrinsic evidence they would have offered to prove a latent ambiguity, they have not met their burden to show they suffered prejudice as a result of the alleged error. (*Grail Semiconductor, Inc. v.*

17

*Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.) We agree with Respondent that the only evidence offered by Appellants regarding Alice Trolan's intent is that which can be "inferred from the trust instrument." In reply to this, Appellants suggest, "[t]he fact that the court denied an evidentiary hearing is exactly the point," yet they do not specify the extrinsic evidence the court could or should have considered if it held such a hearing.

Based on the above, we find the clear, unambiguous terms of the trust express Alice Trolan's intent that the trust terminate, and thus that the trustees must distribute the trust assets, as she is deceased and all of the beneficiaries are now 30 years or more at this time.

### 3. *The Trust Does Not Require Liquidation of the Assets*

Appellants assert that the trial court erred when it ordered liquidation of the trust assets. We agree. Having found the trust clearly and unambiguously requires distribution of the trust assets, we also conclude that the language of the trust clearly and unambiguously grants the trustees discretion regarding the method of distribution of the trust assets. Under Section 6(H) of the trust, the trustees have the power, "[u]pon any division or distribution of the Trust Estate, to partition, allot and distribute the Trust Estate in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution." Based on this language, we conclude that Appellants were not required to liquidate the assets to accomplish distribution of the trust under its terms; rather, liquidation is one of several possible options allowed by Section 6(H).

Absent language in the trust explicitly mandating the liquidation of the trust, the sole authority, if any, for the trial court's order was the trial court's overarching authority to administer trusts. The court can alter administrative provisions of the trust under " 'peculiar' or 'exceptional' circumstances" where necessary to accomplish the purpose

18

of the trustor. (*Ike*, *supra*, 61 Cal.App.4th at p. 83.) The court cannot substitute its judgment and discretion for that of the trustees' if the trustees are acting within proper limits, unless there is a complete failure or refusal to perform the duties of the trustees. (*Greenleaf*, *supra*, 101 Cal.App.2d at p. 662.) While the trustees' discretion is not unlimited or arbitrary, ". . .[t]he judgment of the trustees, exercised in good faith, shall control. . . ." (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 284 (*Copley*).)

Based on our construction of the trust, and the record before us, we conclude the trial court exceeded its authority when it ordered immediate liquidation of the trust assets and substituted its judgment regarding the method of distribution of the trust assets for that of the trustees. Nothing in the record before us suggests the trial court considered whether the Appellants, as majority trustees, were exercising their discretion to value and distribute the trust assets in good faith. Rather, it appears the trial court relied on an erroneous determination that the language of the trust instrument itself required the immediate liquidation of the assets and thus concluded the trustees had failed or refused to perform the duties of the trust.

However, we note that the trustees could accomplish the purpose of the trust—the distribution of equivalent shares of the trust assets to each of the beneficiaries—without liquidating the trust assets. Moreover, under the terms of the trust, Appellants were properly attempting to distribute Respondent's share of the assets to her at the pendency of this litigation, although they were doing so under the mistaken belief they could keep their own shares in the trust. Appellants filed the petition to obtain the trial court's assistance with the distribution of assets to Respondent, asking the trial court to resolve the dispute over the valuation of the real property so that they could complete their distribution obligation with respect to Respondent. The filing of the petition for this purpose falls within the parameters of section 17200, which, among other things, authorizes trustees to petition the court to determine questions of construction of a trust instrument, to determine the existence or nonexistence of a duty or right, and to pass

19

upon the acts of the trustee, including the exercise of discretionary powers. (§ 17200, subd. (b)(1), (2), and (5).) Appellants' proper application for a judicial determination of the value of assets and guidance on the construction of the trust did not provide a basis for the trial court to order immediate liquidation of the assets. The record does not demonstrate that Appellants completely failed or refused to comply with the terms of the trust such that the trial court could, under its administrative power, substitute its discretion for that of the trustees and order liquidation of the assets. The trial court should have deferred to the trustees' determination regarding how to distribute the trust assets, in accord with Section 6(H) of the trust.[10]

## B. Removal of Trustees

According to the settled statement, the trial court removed the parties as cotrustees, and appointed a professional fiduciary to serve as successor trustee, "[b]ased on the Court's belief that the failure to distribute the trust assets was a breach of the fiduciary duties of loyalty and impartiality, and the fact that the parties could not reach a resolution even when they were aware of the court's tentative ruling, and based on the sua sponte authority provided by PC §15642(a). . . ." Appellants argue the trial court abused its discretion in doing so, as they believe the court misconstrued the trust to require the immediate liquidation of the trust assets, and thus lacked statutory grounds for removal. Respondent contends the court correctly removed the trustees, as they failed to comply with the Age 30 Provision, and because there was hostility between the Appellants and herself. We agree with Appellants that the trial court abused its discretion when it ordered the parties removed as trustees.

---

[10] By this same measure, the trial court erred in ordering the trust's share of the 41st Avenue property distributed to the parties in one-sixth shares to be held as tenants in common. The trustees should decide how to distribute that property, along with the other trust assets.

### 1. Standard of Review

Although Appellants argue the standard of review is de novo, all relevant legal authority indicates we must review the trial court's removal of the parties as trustees for abuse of discretion. (See *Estate of Gilmaker* (1962) 57 Cal.2d 627, 633; *Tevis v. Butler* (1894) 103 Cal. 249, 250-251.) The trial court's power to remove trustees "is a power that the court should not lightly exercise, and whether or not such action should be taken . . . rests largely in the discretion of the trial court. Furthermore, the court will not ordinarily remove a trustee appointed by the creator of the trust. [Citation.]" (*Estate of Bixby* (1961) 55 Cal.2d 819, 826 (*Bixby*).)

We measure the trial court's exercise of discretion against the legal principles governing the subject of its action. (*Sargon Enterprises, Inc. v. University of Southern Calif.* (2012) 55 Cal.4th 747, 773 (*Sargon*); *Horsford v. Board of Trustees of Calif. State Univ.* (2005) 132 Cal.App.4th 359, 393-394.) " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action. . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. They are derived from the common law or statutes under which discretion is conferred.' To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' " (*Sargon*, *supra*, 55 Cal.4th at p. 773, internal citations omitted.)

### 2. The Trial Court Abused Its Discretion When It Removed the Trustees

"A trustee may be removed in accordance with the trust instrument, by the court on its own motion, or on petition of a settlor, cotrustee, or beneficiary under Section 17200." (§ 15642, subd. (a).) Section 15642, subdivision (b) sets forth grounds for removal of a trustee, including: "(1) Where the trustee has committed a breach of the trust. [¶] . . . [¶] (3) Where hostility or lack of cooperation among cotrustees impairs the

21

administration of the trust. [¶] (4) Where the trustee fails or declines to act . . . ." Because Alice Trolan appointed her six children as cotrustees, we look to whether "a disqualification clearly appears" in the record.[11] (*Bixby*, *supra*, 55 Cal.2d at p. 826.)

Based on its finding that the Age 30 Provision required immediate liquidation and termination of the trust, the trial court determined the trustees breached their duties of loyalty and impartiality to the trust. However, as discussed *ante*, the trust did not require liquidation of the assets, but distribution of them. Appellants argue they were making appropriate efforts to distribute Respondent's share of the trust assets to her, such that there was no statutory basis to remove the parties as trustees. It does not appear from the record that the trial court considered whether Appellants breached their fiduciary duties if they were not, in fact, required by the terms of the trust to liquidate the assets.

Under section 16000, "On acceptance of the trust, the trustee has a duty to administer the trust according to the trust instrument and, except to the extent the trust instrument provides otherwise, according to this division [§ 15000 et seq.]." Section 16040 provides, "The trustee shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." Trustees must "reasonably" exercise any discretionary powers authorized by the trust instrument. (§ 16080.) Even if given "absolute," "sole," or "uncontrolled" discretion by the trust

---

[11] Appellants suggest the law requires a heightened showing of cause when the trial court removes a trustee on its own motion. Section 15642 does not include a separate standard for sua sponte motions compared to a request made by a settlor, cotrustee, or beneficiary. Appellants do not cite any legal authority indicating such a higher standard exists for a sua sponte motion; nor are we aware of any such authority. We evaluate the issue under the law applicable to all orders removing trustees appointed by the settlor.

instrument, "the trustee shall act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of the trust." (§ 16081, subd. (a).)

The duty of loyalty is set forth in section 16002, subdivision (a), providing, "The trustee has a duty to administer the trust solely in the interest of the beneficiaries." As a fiduciary, the trustee "is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (*Estate of McLaughlin* (1954) 43 Cal.2d 462, 469-470.) Where there are two or more beneficiaries, the duty of impartiality, memorialized in section 16003, provides, "the trustee has a duty to deal impartially with them and shall act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries." (See *Penny v. Wilson* (2004) 123 Cal.App.4th 596, 604 ["The purpose of the trust is paramount, and the trustee must act impartially toward all beneficiaries."]; *Werschkull v. United California Bank* (1978) 85 Cal.App.3d 981, 998-999.)

In the instant matter, if we agreed the trust required complete liquidation of the trust assets, we would easily find the trial court properly exercised its discretion to find Appellants breached the duties set forth above by failing to liquidate the trust assets and distribute the profits accordingly. However, that is not what the trust required. Although Appellants erroneously believed the instrument allowed them to maintain the trust beyond Alice's death, the fact remains they were trying to distribute Respondent's share to her upon her demand. A dispute arose as to the valuation of trust property. Under the terms of the trust, the majority of cotrustees had broad discretion as to the method of distribution, "at valuations determined by the Trustee. . . ."

Nothing in the trial court's settled statement suggests the court considered whether the Appellants were taking reasonable steps to distribute the trust; the court focused only on their failure to liquidate the assets. The record reveals Appellants made appropriate efforts to value the property and distribute Respondent's share accordingly, as authorized

23

by the trust. The parties jointly retained counsel to start administering the trust shortly after Alice Trolan's death in July 2015. In September 2015, Respondent notified the attorney she wanted to receive her share of the trust in cash, a request repeated once she retained her own counsel. A residential property broker valued the Deer Creek property at $425,000 in September 2015. Unable to negotiate an agreement, the jointly retained attorney started proceedings with a probate referee to value the trust assets and move the matter forward; the referee valued the Deer Creek property at $625,000. Given the disparity between the two evaluations, Appellants reasonably obtained a further report on the condition of the property, and an additional evaluation of the property's value, which came back at $355,000. As the parties could not resolve the dispute regarding the value of the Deer Creek property, Appellants filed the petition to seek the trial court's assistance. During the proceedings, each party obtained further valuations of the property; Respondent obtained an appraisal valuing the property at $625,000, while Appellants next appraisal returned a value of $425,000.

While, as cotrustees, Appellants owed a duty of loyalty and impartiality to all beneficiaries, including Respondent, Respondent cites no legal authority, nor are we aware of any, requiring trustees to acquiesce to the demands of one beneficiary when doing so potentially undervalues the shares distributed to the other beneficiaries. Appellants took reasonable steps to attempt to resolve the dispute and distribute Respondent's share to her. Based on its incorrect reading of the trust, the trial court erroneously determined the trustees breached the duties of loyalty and impartiality by not liquidating the trust assets.

The alleged breach of duties was not the sole reason the trial court removed the trustees and appointed a professional fiduciary. In the settled statement, the court said it did so because "the parties could not reach a resolution even when they were aware of the court's tentative ruling." While hostility or lack of cooperation among cotrustees can be a basis to remove the trustees under section 15642, subdivision (b)(3), removal is only

24

appropriate if the hostility impairs the administration of the trust. (*IFS Industries, Inc. v. Stephens* (1984) 159 Cal.App.3d 740, 754; *Copley*, *supra*, 126 Cal.App.3d at p. 288.) There is no evidence the hostility between Appellants and Respondent impaired the administration of the trust under its clear and unambiguous terms. Alice Trolan elected to appoint her children as cotrustees, allowing them to act by majority vote. The trust allows the trustees, in this case, the majority of the cotrustees, to determine the method of distribution and value of assets at the time of a distribution. If the cotrustees could not reach a consensus as to the value, such that there was no majority, that would constitute an impairment of the administration of the trust. However, the fact Respondent does not agree to the majority cotrustees' valuation of the trust assets does nothing to impair them from administering the trust according to the trust instrument.

Having found no statutory basis for the trial court to remove the parties as trustees, we will reverse the trial court's order accordingly.

### C. Attorney Fees and Costs

Appellants contend Respondent challenged their petition in her role as a beneficiary, not as a trustee, such that the trial court erred in ordering the trust to pay her attorney fees and costs. Respondent argues her actions were for the benefit of the trust, in her role as a successor cotrustee.

"We apply an abuse of discretion standard to the trial court's decision granting . . . fee requests payable from the trust's assets. There are limits to the scope of our deference, however, 'When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.' '[D]iscretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied the "wrong test" or standard in reaching its result.' 'A trial court's award of attorney fees must be

25

able to be rationalized to be affirmed on appeal.' " (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 268-269, internal citations omitted.)

The record on appeal does not provide detailed information about the trial court's reasons for ordering the trust to pay both Appellants' and Respondent's attorney fees and costs. "If litigation is necessary for the preservation of the trust, the trustee is entitled to reimbursement for his or her expenditures from the trust; however, if the litigation is specifically for the benefit of the trustee, the trustee must bear his or her own costs incurred, and is not entitled to reimbursement from the trust. [Citation.]" (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1461.) The court's rulings that the trust required immediate liquidation and that a failure to distribute the trust accordingly constituted breaches in the trustee's fiduciary duties would, if correct, support a finding that Respondent undertook litigation for the benefit of the trust. However, given the trial court's erroneous application of the relevant legal principles, we are compelled to remand the issue to the trial court for further consideration. Our reversal on this issue is without prejudice to the trial court's further findings in this regard.

### III.    DISPOSITION

We reverse the trial court's September 30, 2016, October 13, 2016 and December 2, 2016 orders, and remand the matter to the trial court with instructions to remove the successor trustee, to reinstate Appellants and Respondent as trustees, and to order the trustees to distribute the trust assets pursuant to Section 6(H) of the trust. The trial court shall then reconsider de novo Respondent's request that the trust pay her attorney fees and costs. Each side shall bear its own costs on appeal.

_____
Greenwood, P.J.

WE CONCUR:


_____
 Grover, J.


_____
 Danner, J.


Trolan et al. v. Trolan
No. H044213

Trial Court:  Santa Cruz County Superior Court
Superior Court No.: 16PR00237

Trial Judges:  The Honorable John M. Gallagher,
The Honorable Marjorie Laird Carter

Attorneys for Plaintiffs and Appellants,  Willoughby, Stuart, Bening & Cook
Patrick Trolan et al.:  Ellyn E. Nesbit

Richard E. Damon, PC
Richard E. Damon

Attorneys for Defendant and Respondent,  John E. Boessenecker
Nellie Trolan:  Randall D. Boessenecker

Law Office Ann Marshall Robbeloth
Ann Marshall Robbeloth

Law Office of Edward Broitman
Edward Morris Broitman

Trolan et al. v. Trolan
No. H044213